EMMA ENGLISH v. MINNEAPOLIS & ST. PAUL SUBURBAN RAILWAY COMPANY.[1]

November 17, 1905.

Nos. 14,465—(92).

**Amendment of Pleading.**

In an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, the complaint alleged that the defendant so carelessly and negligently operated and controlled the car as to cause the car to collide violently with an iron gate extending across the tracks, thereby with great force throwing the plaintiff against the seats and other parts of the car. At the trial evidence was received from which it might reasonably be inferred that the plaintiff's injuries were caused by the manner in which the car

[1] Reported in 104 N. W. 886.

was handled by the motorman in attempting to make a sudden stop, and not solely by the shock of the collision. *Held*, that the trial court did not abuse its discretion in allowing the plaintiff to amend the complaint in order to make the allegations conform to the evidence.

**New Trial.**

Where it is claimed that the damages awarded by a jury in an action to recover unliquidated damages, such as an action for personal injuries, are excessive or inadequate, and were given under the influence of passion or prejudice, the motion must be made in the trial court, under the fourth subdivision of section 5398, G. S. 1894.

**Discretion of Court.**

The granting or refusal of a new trial upon the ground of excessive or inadequate damages appearing to have been given under the influence of passion or prejudice rests in the sound judicial discretion of the trial court, subject to review in this court under the rules applicable to other discretionary orders. It cannot be raised for the first time in this court.

Action in the district court for Ramsey county to recover $5,000 for personal injuries sustained by plaintiff while a passenger in defendant's car. The case was tried before Hallam, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Munn & Thygeson*, for appellant.

*H. A. Loughran*, for respondent.

ELLIOTT, J.

On December 29, 1904, the respondent was a passenger on one of appellant's cars then being operated between Stillwater and St. Paul. At a point on the line of railway at or near the village of North St. Paul, where the street railway intersects the tracks of the Wisconsin Central Railway Company, the car in which respondent was riding collided with a semaphore signal which extended across the track at that point, and came to a sudden stop. The respondent claimed that she was injured by reason of such collision and the sudden stopping and jerking of the car, and in an action to recover damages for such injuries received a verdict in her favor for the sum of $1,500. The appellant's motions for judgment notwithstanding the verdict or for a new trial were denied, and the case comes to this court upon appeal

from this order. The appellant seeks to have the order reversed on the grounds: (1) Error of the trial court in permitting the plaintiff, at the close of the evidence, to amend the complaint; (2) that the verdict of the jury was excessive and given under the influence of passion and prejudice; and (3) erroneous rulings of the trial court in the reception and rejection of evidence.

1. The complaint as it originally stood alleged, as grounds of negligence upon which the right of action was predicated, that

> While this plaintiff was a passenger upon one of defendant's cars * * * said defendant, its servants, agents, and employees, then and there having the control, management, and direction of said car, so carelessly, negligently, recklessly, and unskilfully managed, operated, and controlled said car and said street railway and their equipment as to cause the car upon which plaintiff was riding to violently and with great force and speed collide with an iron gate extending across the tracks of said street railway company at said point as aforesaid, thereby with great force throwing this plaintiff from her seat against other seats and parts of said car, thereby seriously injuring, etc.

At the close of the testimony plaintiff asked leave to amend the complaint, so as to make the same conform to the facts proven, by inserting before the words "thereby with great force throwing this plaintiff" the words "and then and there suddenly jerked and stopped." This amendment was allowed. Appellant contends that the issue was thus changed from that tendered by the complaint, and with reference to which the evidence was offered and received, and that it was thereby prejudiced. We think the amendment was properly allowed. The record shows that both plaintiff and defendant introduced evidence for the purpose of showing the manner in which the car was handled at the time of the accident and immediately thereafter. Without objection on the part of defendant plaintiff testified as follows:

> We were riding along the same as usual for most of the way over, and the car collided with this iron gate, throwing me against the seat. As I went to rise up I was thrown against the seat. * * * When I raised to go out, I was thrown against

a seat and knocked back into the seat again. * * * When I kind of rallied from that, I tried to get out of the car, and I was thrown by the side against the corner of the other seat. * * * The first that I noticed was they come together with such a smash that it jarred the whole car. * * * It seemed to slide against something, and trying to stop, and then jerked—gave several jerks; the only way I can explain it.

In answer to the question, "And it was in one of those jerks, you say, that you were thrown against the seat?" The witness answered, "Yes, sir."

On cross-examination the following questions and answers appear in the record.

Q. You didn't notice it until you smashed into it? A. No, sir. Q. And then did the car stop when it smashed into the semaphore? A. Well, it come to a sudden stop, and then it jerked. Q. Jerked and started up again, eh? Just as it struck the semaphore? A. Well, I suppose that was when it was. There was a sudden crash and a jerk, and then it jerked different times, once or twice, afterwards, that I know of.

Later the witness said: "As I got into the aisle and started to go out, the car jerked, and I struck this side on the end of the seat."

Defendant's counsel then asked: "That is, after you got in the aisle? A. Yes, sir. Q. You are sure that the car got another jerk? A. Yes, sir; it surely did. Q. So that, after falling forward on the seat, the car made another jerk and catched you back in the left side? Is that the way it is? A. I was thrown kind of against the end of the seat.

The cross-examination continued along this line for the purpose of showing the effect on the witness of the several "jerks" which she claimed the car made.

The witness Tilden, called by plaintiff, testified:

Well, the first we knew there was a crash, and as soon as I heard this crash I got up. It was a crash and a jar, and this thing came along and smashed the window. * * * When

we struck this gate, it was a crash and jar, and then the car came to a stop very sudden.

Witness Hollering testified:

> There was a crash, and we all jumped up and ran towards the back end of the car, and then, of course, after the crash the car stopped. * * * It stopped with a jerk. * * * I think it did strike more than once. I am sure it did.

The witness Lunden testified that the stop "seemed to be of a kind of jolty nature," and on cross-examination he was asked:

> Well, now, there was just one stop there, wasn't there? That it, there was just one stop at the time of that alleged accident there; there was just one stop of the car, then it went across the track and stopped again? A. Why, no; there seemed to be two or three jerks, sudden jerks.

The witness Meilicke testified that the car stopped very "suddenly, with a jerk—with three jerks."

For the defendant the witness Stewart, the conductor on the car, testified that the track was slippery and downgrade towards the crossing; that after striking the semaphore the car stopped with the rear end about eighteen feet from the semaphore; that striking the semaphore had no effect on the car, other than to break the glass in the windows; that brakes were applied before reaching the semaphore; that the wheels were sliding; that the car did not come to a short stop there; that the stop was not violent enough to throw any one down; that the motorman had applied the air before it struck.

> I did not feel the jar; did not notice any jar; did not have a sudden stop.

The witness Neumiller, for defendant, testified that the car did not come to a sudden stop.

> I did not get a jolting. It was not a jolting motion.

It appears from this brief abstract of a portion of the testimony that the manner in which the car was handled by the defendant's employees

was fully covered by the evidence offered by both plaintiff and defendant. Upon this condition of the evidence it was clearly within the discretion of the trial court to allow the plaintiff to amend her complaint in order that it might conform to the evidence.

2. On the motion for a new trial the defendant claimed that the verdict should be set aside because it was not justified by the evidence. This did not raise the question of excessive damages given under the influence of passion and prejudice. We have recently held that: "In actions to recover unliquidated damages, such as actions for personal injuries, libel and slander, and similar actions, where the plaintiff's damages cannot be computed by mathematical calculation, and are not susceptible of proof by opinion evidence, and are within the discretion of the jury, the motion for new trial on the ground of excessive or inadequate damages should be made under the fourth subdivision of section 5398, G. S. 1894; and in such cases the court will not interfere with the verdict unless the damages awarded appear clearly to be excessive or inadequate, as the case may be, and to have been given under the influence of passion or prejudice." Mohr v. Williams, 95 Minn. 261, 104 N. W. 12. The granting or refusal of a new trial on the ground of excessive or inadequate damages rests in the sound judicial discretion of the trial court, and it is therefore necessary that the trial court should have the opportunity to exercise its discretionary power in this respect. Mohr v. Williams, supra; Pratt v. Pioneer Press Co., 32 Minn. 217, 20 N. W. 87.

The question was not raised on the motion for a new trial, and it was not until the case reached this court that the defendant assigned as error that "the court erred in holding that the verdict of the jury was not excessive and was not influenced by passion and prejudice." It follows that, as said in Severns v. Brainard, 61 Minn. 265, 63 N. W. 477: "Whether the damages were excessive we are not at liberty to determine, because the record does not show that the appellant ever applied to the court below for a reduction of the amount of the damages, or that he made a motion for a new trial because the damages assessed by the jury were excessive. In order to have presented that question properly upon this appeal, the court below should have exercised its discretion and judgment upon the matter, and then his decision or order would have been reviewable here."

3. The appellant assigns as error the refusal of the court to charge "that, while the jury are judges of the credibility of witnesses, at the same time, if testimony given by a witness contradicts actual physical conditions and facts surrounding the accident, the jury have no right to consider such testimony." Whatever might have been said as to the propriety of this instruction if the complaint had not been amended, it certainly was not applicable to the issue as actually submitted to the jury.

The other assignments of error relate to the reception or rejection of evidence. We have given them all careful consideration, and find no error which would justify a reversal of the order of the trial court.

Order affirmed.